B

LCIA Case No: 215305
VISA COMMODITIES AG v BLUESTONE COAL SALES CORP.          Final Award

# LONDON COURT OF INTERNATIONAL ARBITRATION

## CASE NO. 215305

### VISA COMMODITIES AG

Claimant

### V.

### BLUESTONE COAL SALES CORPORATION

Respondent

---

### FINAL AWARD

---

**Before**:

Genevieve Poirier (Sole Arbitrator)

i

LCIA Case No: 215305
VISA COMMODITIES AG v BLUESTONE COAL SALES CORP.                    Final Award

## TABLE OF CONTENTS

1   INTRODUCTION ...................................................................1

2   THE PARTIES .....................................................................1

2.1   The Claimant ................................................................1

2.2   The Respondent............................................................2

3   THE TRIBUNAL ..................................................................3

4   THE ARBITRATION AGREEMENT, APPLICABLE LAW
    AND SEAT OF THE ARBITRATION ....................................3

5   THE PROCEDURAL HISTORY ............................................4

6   SUMMARY OF THE FACTS RELEVANT TO THE
    DISPUTE............................................................................10

6.1   The background to the dispute ....................................10

6.2   The main terms of the Settlement Agreement ............11

6.3   The dispute .................................................................13

6.4   Details for payment ....................................................13

7   THE RELIEF SOUGHT ......................................................14

8   THE ISSUES TO BE DECIDED ...........................................15

9   DISCUSSION AND DECISION ...........................................15

9.1   Payment due under Settlement Agreement ................15

9.2   Interest.......................................................................16

10 THE COSTS OF THE ARBITRATION ................................17

10.1  The Arbitration Costs .................................................17

10.2  The Legal Costs..........................................................18

LCIA Case No: 215305
VISA COMMODITIES AG v BLUESTONE COAL SALES CORP.                    Final Award

10.3   Claimant's position on the apportionment of Costs .................18

10.4   Sole Arbitrator's Findings ........................................................18

11 DISPOSITIVE PART ...........................................................19

LCIA Case No: 215305
VISA COMMODITIES AG v BLUESTONE COAL SALES CORP.          Final Award

## 1   INTRODUCTION

1   The dispute between the Parties arises out of their relationship with respect to a sale and purchase agreement for coking coal.  The coking coal was not supplied within a stipulated period under that sale and purchase agreement and the Parties entered into a Settlement Agreement dated 22 April 2021 (the "**Settlement Agreement**").

2   Under the terms of the Settlement Agreement the Respondent was to pay to the Claimant the sum of USD 1,500,000 (the "**Settlement Amount**") in three separate instalments of USD 500,000 over the course of 2021.  None of those payments were made.

3   The Claimant has therefore sought an award ordering payment of the Settlement Amount, plus interest and costs.

4   The Respondent initially participated in this arbitration and responded to the Claimant's case in the briefest of terms saying in its Response to Request for Arbitration that it "*disputes the claimed damages*".  The Respondent did not elaborate further and failed to participate in the arbitration subsequent to filing its Response.

5   For the reasons set out in this Final Award, the Sole Arbitrator finds that the Respondent is liable to pay the Claimant the Settlement Amount claimed in this arbitration, plus interest and costs.

## 2   THE PARTIES

### 2.1   The Claimant

6   The Claimant in this arbitration is: VISA Commodities AG (hereinafter the "**Claimant**").

7   The Claimant is a company incorporated under the laws of Switzerland with its registered office at:

Aegeristrasse 48
6300 Zug
Switzerland
Tel: +91-33 3011 9000

1

LCIA Case No: 215305
VISA COMMODITIES AG v BLUESTONE COAL SALES CORP.                    Final Award

Email: jose.kahn@visacommodities.com;
jennifer.peer@visacommodities.com

8    The Claimant is represented in this arbitration by:

**Clyde & Co LLP**
Mr Michael Swangard
Ms Tara Smith
Mr Harry Swinton
The St Botolph Building
138 Houndsditch
London EC3A 7AR
England
Tel: +44 (0) 20 7876 5000
Email: michael.swangard@clydeco.com; tara.smith@clydeco.com;
harry.swinton@clydeco.com

### 2.2    The Respondent

9    The Respondent in this arbitration is: Bluestone Coal Sales Corporation
(hereinafter the "**Respondent**").

10   The Respondent is a company incorporated in Delaware (USA) with its
principal place of business at:

302 S. Jefferson Street
Roanoke
Virginia 24011
USA
Tel: +1 (540) 776-7890
Email: steve.ball@bluestone-coal.com

11   The Respondent is represented in this arbitration by:

**Aaron B. Houchens, P.C.**
Aaron B. Houchens, Esq.
111 E. Main Street
Salem
Virginia 24153
USA
Tel: +1 540 389 4498
Email: aaron@houchenslaw.com

2

12  The Claimant and the Respondent are referred to together as the "**Parties**" and individually as a "**Party**".

## 3   THE TRIBUNAL

13  The arbitral tribunal is composed of a Sole Arbitrator, appointed by the LCIA on 8 December 2021, and notified to the Parties on 9 December 2021:

Ms Genevieve Poirier
LALIVE (UK) LLP
9 Cloak Lane
London
EC4R 2RU
England

## 4   THE ARBITRATION AGREEMENT, APPLICABLE LAW AND SEAT OF THE ARBITRATION

14  Clause 11 of the Settlement Agreement contains the Arbitration Clause which provides as follows:

*"11. GOVERNNG [sic] LAW AND DISPUTE RESOLUTION*

*This Settlement Agreement shall be governed by English law. Any dispute arising out of or in connection with this Settlement Agreement, including any question regarding its existence, validity or termination, shall be referred to and finally resolved by arbitration administered by London Court of International Arbitration in accordance with the Arbitration Rules of the LCIA for the time being in force, which rules are deemed to be incorporated by reference in this clause. The seat and venue of the arbitration shall be London. The tribunal shall consist of a sole arbitrator. The language of the arbitration shall be English"*

15  In light of the above, the Sole Arbitrator is satisfied of her jurisdiction to act in this matter.

16  As set out in Clause 11 and as identified above, the governing law of the Settlement Agreement is English law, the language of the arbitration is English and the seat is London.

3

17    In accordance with Section 2(1) of the English Arbitration Act 1996 (the
      "**Arbitration Act**") the relevant provisions of the Arbitration Act apply to
      the arbitration.

## 5    THE PROCEDURAL HISTORY

18    The Claimant commenced this arbitration against the Respondent by
      submitting a Request for Arbitration under the LCIA Arbitration Rules
      (2020) (the "**LCIA Rules**") dated 6 October 2021, to the LCIA (the
      "**Request**"), accompanied by an Exhibit of supporting documents (the
      "**Exhibit**").

19    On 7 October 2021, the LCIA directed that the Parties pay an initial
      Advance Payment for Costs in the amount of GBP 5,000 from each Party
      (the "**Advance**") by no later than 14 October 2021.

20    The Respondent submitted its Response to Request for Arbitration, dated
      2 November 2021 (the "**Response**") to the LCIA on 18 November 2021 in
      which it nominated its representative and set out its address for all
      communications (as set out at paragraph 11 above).

21    On 18 November 2021, the Claimant informed the LCIA and the
      Respondent of its election to have its Request treated as its Statement of
      Case pursuant to Article 15.2 of the Rules (hereinafter and for simplicity,
      the Request will continue to be referred to as the Request and not the
      Statement of Case).

22    On 9 December 2021, the LCIA notified the Parties that the LCIA Court
      had appointed the Tribunal, consisting of Genevieve Poirier as Sole
      Arbitrator; it further confirmed that the LCIA had received the Claimant's
      share of the Advance (as referred to at paragraph 19 above), and requested
      that the Respondent pay, without delay, its share of the Advance.

23    In the same communication, the LCIA also notified the Respondent:

      "*Unless the parties have agreed or jointly proposed in writing otherwise,
      or should [the Sole Arbitrator] decide differently, the Respondent shall,
      within 28 days of today, deliver to [the Sole Arbitrator] and all other
      parties either: (i) its written election to have its Response treated as its*

*Statement of Defence and (if applicable) Counterclaim; or (ii) its written Statement of Defence and (if applicable) Statement of Counterclaim (including all documents relied upon) pursuant to Article 15.3 of the Rules*"

24    By email dated 13 December 2021, the Sole Arbitrator wrote to the Parties to seek to establish an agreed procedural timetable pursuant to Article 14 of the Rules, and requested that the Parties respond with their proposals by 20 December 2021.

25    In the same communication, the Sole Arbitrator confirmed that the default timetable for the written stage of the arbitration under Article 15 of the Rules applied, pursuant to which the Respondent's Statement of Defence would be due on 6 January 2022, and that the Respondent should prepare accordingly.

26    No response was received to the email of 13 December 2021 and the Sole Arbitrator wrote again to the Parties on 21 December 2021 asking if they required more time; and whether a video conference would be required, offering dates for the same.

27    On 21 December 2021, the Claimant wrote to the Sole Arbitrator and the Respondent to address its lack of response, to confirm that it would be in touch with the Respondent's team and requesting a short extension to agree an appropriate procedure following service of the Statement of Defence.

28    On 23 December 2021, having had no response from the Respondent, the Sole Arbitrator agreed to the Claimant's proposal and allowed the Parties until 13 January 2022 to revert with their agreed or respective views as to the timetable and/or procedural matters.

29    In light of the above, the default timetable under Article 15 of the Rules continued to apply.

30    The Respondent did not file its Statement of Defence or any written election by 6 January 2022 or at all.

31    On 10 January 2022, the LCIA wrote to the Parties to confirm that the Respondent had failed to lodge its share of the Advance and directed,

5

LCIA Case No: 215305
VISA COMMODITIES AG v BLUESTONE COAL SALES CORP.                     Final Award

pursuant to Article 24.6 of the Rules, that the Claimant meet the Respondent's share (GBP 5,000) by 24 January 2022.

32   On 10 January 2022, the Claimant wrote to the Sole Arbitrator noting that the Respondent had failed to file its Statement of Defence within time and stated as follows:

*"The Response to the Request for Arbitration admitted the Settlement Agreement and made a bare unexplained and unsubstantiated challenge to the sum claimed. It is not surprising that no substantive Defence has since been forthcoming, since in truth, the claim is simply one in debt for a liquidated sum pursuant to a[sic] an uncontested Settlement Agreement. There can be no legitimate challenge to the outstanding agreed Settlement Sum claimed."*

33   The Claimant requested that the Sole Arbitrator proceed to issue a final award in the Claimant's favour, together with interest and costs, pursuant to Article 15.8 of the Rules.

34   On 12 January 2022, the Sole Arbitrator wrote to the Parties by email and additionally by recorded delivery at the addresses specified in the Parties' respective Request and Response and:

   a) acknowledged the Claimant's request, and the fact that the Respondent had failed to either file a Statement of Defence or elect to have its Response treated as its Statement of Defence;

   b) requested that the Respondent indicate its intentions to further participate in this arbitration by not later than 21 January 2022;

   c) requested that the Claimant advise what steps it had taken to engage with the Respondent as to procedural matters and timetable; and

   d) cautioned the Respondent as to the Sole Arbitrator's entitlement to issue a final award, including without a hearing, pursuant to Article 15.8 of the Rules, and that should the Respondent fail to respond, the Sole Arbitrator would proceed to take steps to conclude this matter by way of final award.

6

LCIA Case No: 215305
VISA COMMODITIES AG v BLUESTONE COAL SALES CORP.          Final Award

35   The letter was recorded as delivered to the Respondent (at the address set out in its Response and identified at paragraph 11, above) at 13:45 on 19 January 2022.

36   No response was received from the Respondent, either by 21 January 2022 or at all.

37   Following the above communications, there was a short delay to proceedings pending payment of the Respondent's share of the Advance. Further to Article 24.5 of the Rules, the Sole Arbitrator was not able to proceed with the arbitration in the period 24 January 2022 – 4 February 2022, until the LCIA was in funds.  On 4 February 2022, the LCIA confirmed that the Claimant had paid the full Advance and the matter could proceed.

38   On 4 February 2022, in response to the Sole Arbitrator's letter of 12 January 2022, the Claimant advised that it had *"…not sought to separately engage with the Respondent on the matter of the timetable…"*.

39   The Claimant's communication of 4 February 2022 further stated:

   *"…in the absence of any participation from the Respondent and with no indication of any form of substantive defence we see no need for further procedural steps beyond proceeding to an Award…."* and

   *"…we repeat our request that the Sole Arbitrator proceed to issue its Award in favour of our client, for the full sum claimed, together with interest and costs, on an expedited basis, in accordance with Rule 15.8 of the LCIA Rules…"*

40   On 9 February 2022, the Sole Arbitrator issued **Procedural Order No. 1**, in which she determined that she would accede to the Claimant's request and proceed to deliberate and to issue a final award, without a hearing, pursuant to Article 15.8 of the Rules.

41   In reaching this decision, the Sole Arbitrator noted that:

   • the Respondent had not opposed the Claimant's request for the Sole Arbitrator to proceed to issuing a final award, having been afforded the opportunity to do so;

7

- neither Party had indicated the need for a hearing, the Claimant having requested that the Sole Arbitrator proceed to issuing a final award without further procedural steps;

- no fact or expert witness evidence had been brought in this matter such as would require an oral hearing; and

- the Sole Arbitrator was mindful of her duty to ensure the fair, expeditious and efficient conduct of this arbitration.

42    In **Procedural Order No. 1** at paragraph 24, the Sole Arbitrator put a question to the Claimant to assist with her deliberations, asking what conclusion she should reach, if any, as to: the absence of account details for the bank account into which the Settlement Amount under the Settlement Agreement should be paid, in the version of the Settlement Agreement filed in the Exhibit at internal page 17.  The Claimant was requested to respond to the same by 16 February 2022, and the Respondent was invited to reply to any response by 23 February 2022.

43    In **Procedural Order No. 1**, the Sole Arbitrator additionally provided a procedural timetable for the remainder of the arbitration (the "**Procedural Timetable**"),

44    Also on 9 February 2022, the Sole Arbitrator wrote to the Respondent's counsel, as indicated at **Procedural Order No.1** paragraph 22, and asked it to confirm, by return, whether it remained instructed in this matter.  The Sole Arbitrator advised that absent a response, she would write to the Respondent at its principal place of business, identified in the Response, but which was not stated to be the address for communications in this matter.

45    No response was received from the Respondent or its counsel to that communication.

46    On 16 February 2022, the Claimant responded to the query set out in **Procedural Order No. 1** at paragraph 24 and identified the account details of the bank account into which the Settlement Amount was to be paid.

8

LCIA Case No: 215305

VISA COMMODITIES AG v BLUESTONE COAL SALES CORP.          Final Award

47  Also on 16 February 2022, the Sole Arbitrator wrote to the Respondent at its principal place of business (as well as to its counsel, which remained and remains the address for communications in this matter) by email and recorded delivery, enclosing **Procedural Order No. 1** and inviting the Respondent to make any representation it wished by 23 February 2022.

48  The letter was recorded as delivered to the Respondent's principal place of business at 15:49 on 18 February 2022.  The Respondent did not respond to that letter, either by 23 February 2022 or at all.

49  On 28 February 2022, the Sole Arbitrator wrote to the Parties and:

    a)  as indicated at **Procedural Order No. 1** paragraph 28, invited them to set out their submissions on costs (incorporating Legal Costs and Arbitration Costs as defined in Article 28 of the Rules) as well as interest, to be simultaneously exchanged and filed on 7 March 2022;

    b)  allocated an additional week for responsive submissions (if any) to be simultaneously exchanged and filed on 14 March 2022;

    c)  advised in accordance with Article 15.10 of the Rules that she had set aside adequate time for deliberations and anticipated rendering a final award following the deadline for the costs and interest reply submissions; and

    d)  duly updated the **Procedural Timetable**.

50  On 2 March 2022, the LCIA directed the Claimant to pay a further advance payment for costs in the amount of GBP 8,000 by 9 March 2022 (the "**Further Advance**").  The Respondent was not directed to make any payment by reason of its "*non-participation to date*".

51  By email of 4 March 2022, the Claimant requested an extension to the deadline for the filing of costs submissions to 11 March 2022, with reply submissions to follow on 18 March 2022.

52  The Sole Arbitrator responded on the same date and granted the requested extension, updating the **Procedural Timetable** accordingly.

53  On 11 March 2022, the LCIA notified the Parties and the Sole Arbitrator that the Further Advance had not been paid and reminded the Parties of Article 24.5 of the Rules.

54  The Claimant responded on the same date to confirm that arrangements were being made to effect payment.

55  On 11 March 2022, the Claimant provided its submission, described in the cover email as 'submissions on costs and interest', comprised of a document entitled "Cost Submissions of the Claimant", but which made limited reference to interest; and a separate "Schedule of Costs", (hereinafter the **Cost and Interest Submission**").  The Respondent did not provide submissions on that date or at all.

56  On 16 March 2022, the LCIA confirmed that the Claimant had paid the Further Advance.

57  On 17 March 2022, the Sole Arbitrator wrote to the Parties to acknowledge the Claimant's Further Advance payment, receipt of the Cost and Interest Submission, and reminded the Respondent that it was entitled to file any reply by 18 March 2022.

58  Neither Party filed responsive costs or interest submissions.

59  The Sole Arbitrator thereafter took time to deliberate.

60  On 5 April 2022 the LCIA Court determined the costs of the Arbitration pursuant to Article 28.1 of the LCIA Rules

## 6   SUMMARY OF THE FACTS RELEVANT TO THE DISPUTE

### 6.1   The background to the dispute

61  As set out in the Request, and which was not disputed in the Response, the Claimant (as Buyer) and Respondent (as Seller) were parties to a Sale and Purchase agreement dated 23 November 2020 (subsequently amended) (the "**SPA**"), for the sale and purchase of approximately 70,000 MT of Green Ridge Low Vol Coking Coal of US Origin in Bulk (the "**Coal**").

10

LCIA Case No: 215305
VISA COMMODITIES AG v BLUESTONE COAL SALES CORP.                    Final Award

62    As also set out in the Request, the Respondent did not supply the Coal
      within the stipulated delivery period and the Parties therefore entered into
      a Settlement Agreement dated 22 April 2021.

63    Under the terms of the Settlement Agreement, the Respondent undertook
      to pay to the Claimant the Settlement Amount of USD 1,500,000 in three
      separate instalments of USD 500,000, due on 31 May 2021, 30 June 2021,
      and 30 July 2021.

64    It is the Claimant's case that no payments were received pursuant to the
      Settlement Agreement.

65    The Claimant avers that it requested performance of the Settlement
      Agreement, culminating in a "final demand" letter sent by its solicitors to
      the Respondent on 14 September 2021 (Exhibit page 21).  In relevant part,
      that letter demands payment of the Settlement Amount by not later than 21
      September 2021 and sets out the account details of the bank account into
      which the Settlement Amount should be paid.  It cautions that if the
      Respondent fails to pay, the Claimant's solicitors are instructed to take
      action, including commencing arbitration under the Settlement Agreement.

      ### 6.2    The main terms of the Settlement Agreement

66    The main terms of the Settlement Agreement were identified in the
      Request; and a copy of the Settlement Agreement was provided in the
      Exhibit.  The main terms are as follows:

      *"1.1 FULL AND FINAL SETTLEMENT*

      *1.2 BLUESTONE irrevocably and unconditionally acknowledges, agrees
      and undertakes as follows:*

      *1.2.1 BLUESTONE shall pay to VISA the sum of United States Dollars One
      Million Five Hundred Thousand (USD1,500,000.00) (the "Settlement
      Amount") in accordance with the mechanism set out herein below in full
      and final settlement of all claims and disputes between the parties relating
      to and/or arising out of the Contract.*

11

LCIA Case No: 215305
VISA COMMODITIES AG v BLUESTONE COAL SALES CORP.                    Final Award

*1.2.2 BLUESTONE shall pay the Settlement Amount to VISA in three instalments as follows:*

> *(i) The first instalment of United States Dollars Five Hundred Thousand (USD500,000.00) (the "First Instalment") shall be paid no later than 31st May 2021 to the following bank account free of bank charges and without any discount, set-off or deduction:*

> *BENEFICIARY BANK NAME:*

> *BENEFICIARY NAME: VISA COMMODITIES AG*

> *ACCOUNT NO:*

> *SWIFT CODE:*

> *(ii) The second instalment of United States Dollars Five Hundred Thousand (USD 500,000.00) (the "Second Instalment") shall be paid by no later than 30th June 2021 to the bank account specified at Clause 1.2.2(i) above free of bank charges and without any discount, set-off or deduction.*

> *(iii) The third instalment of United States Dollars Five Hundred Thousand (USD500,000.00) (the "Third Instalment") shall be paid by no later than 30th July 2021 to the bank account specified at Clause 1.2.2(i) above free of bank charges and without any discount, set-off or deduction."*

[…]

*"4 COSTS*

*4.1 Each party shall bear its own costs, disbursements, and other expenses in connection with the negotiation, preparation, execution and implementation of this Settlement Agreement.*

*4.2 No provision of this Clause 4 shall prejudice parties' right to recover any costs, disbursements, and/or other expenses in the event of any breach of any of the provisions of Clause 1.2.2 by BLUESTONE."*

12

LCIA Case No: 215305
VISA COMMODITIES AG v BLUESTONE COAL SALES CORP.          Final Award

### 6.3     The dispute

67    In the Response, which runs to two pages in total, the Respondent admits
the relationship with the Claimant and that a Settlement Agreement was
entered into, but disputes the claim.

68    The Respondent's answer to the case against it is set out in full below:

*"This dispute arises from a failed contractual relationship between the
parties regarding a coal transaction. The dispute was settled, and a
Settlement Agreement was executed. Respondent acknowledges the
Settlement Agreement's arbitration provision and consents to the
arbitration before this tribunal. Respondent disputes the claimed
damages."*

69    Because the Respondent has failed to file any other submission or respond
to any correspondence following the submission of its Response, this is the
sum total of the information as to its case before the Sole Arbitrator.

70    The Respondent does not submit that it complied with the terms of the
Settlement Agreement, it does not contest the Claimant's case that no
payments were made, it does not give any defence for non-payment, nor
does it give any reason why the claimed damages are disputed.

### 6.4     Details for payment

71    On review of the Settlement Agreement, the Sole Arbitrator observed that
the details for payment into the relevant bank account were blank (as set
out above at paragraph 66).

72    The Sole Arbitrator sought clarification in **Procedural Order No. 1** at
paragraph 24 as to whether the copy of the Settlement Agreement in the
Exhibit was the final version and if it was, what conclusion, if any, the Sole
Arbitrator should reach as to the absence of account details for payment of
the Settlement Amount.

73    The Claimant provided the requested clarification on 16 February 2022
explaining that the Settlement Agreement in the Exhibit was the final

13

LCIA Case No: 215305
VISA COMMODITIES AG v BLUESTONE COAL SALES CORP.          Final Award

version, and that although the account details section was blank, the following had occurred:

*"The Respondent signed the Settlement Agreement without the bank details save for the account name on 7 May 2021 and returned the same to the Claimant. The Claimant then countersigned that document, and provided the Claimant's bank details in its covering email…."*

74    The "covering email" referred to above was provided to the Sole Arbitrator.   It is dated 10 May 2021, is addressed to two email addresses for the Respondent, encloses the countersigned document with the original said to follow by courier, and identifies the account details, as averred by the Claimant.

75    The bank account details contained in the covering email are the same as those set out in the "final demand" letter dated 14 September 2022 found at page 21 of the Exhibit as referred to above at paragraph 65.

## 7    THE RELIEF SOUGHT

76    In the Request, the Claimant set out its prayer for relief, as follows:

*"The Claimant respectfully requests the Tribunal enter an award:*

*i. ordering immediate payment by the Respondent of the Settlement Amount of USD1,500,000;*

*ii. ordering the Respondent to pay the Claimant interest on such sums as are found due to it at such a rate and for such a period as the Tribunal thinks fit; and*

*iii. ordering the Respondent to pay the Claimant's costs associated with these proceedings, including legal fees and expenses in an amount to be quantified pursuant to Article 28 of the Rules."*

LCIA Case No: 215305
VISA COMMODITIES AG v BLUESTONE COAL SALES CORP.                    Final Award

## 8    THE ISSUES TO BE DECIDED

77    In view of the relief requested, the Sole Arbitrator must decide the following issues:

1.  Whether the Claimant is entitled to payment of the Settlement Amount;

2.  Whether the Claimant is entitled to interest on any amount, and, if so, accruing from which dates, at which rate and on which basis (simple or compound); and

3.  What should be the allocation of the costs of these proceedings between the Claimant and the Respondent; including the impact, if any, of the failure of the Respondent to participate following the filing of the Response.

## 9    DISCUSSION AND DECISION

### 9.1    Payment due under Settlement Agreement

78    Clause 1.2 of the Settlement Agreement is in the terms set out above at paragraph 66.

79    It is not disputed that the Settlement Agreement was validly executed by the Parties, and in any case, came into force.  It is not disputed that, despite the absence of account details in the Settlement Agreement, those details were identified at least by 10 May 2021, at which date the Claimant sent the countersigned Settlement Agreement to the Respondent.

80    Save for the bare statement that it "*disputes the claimed damages*" no substantive excuse or cogent defence has been raised to this claim by the Respondent.

81    Accordingly, based on all the evidence before her, the Sole Arbitrator has no reason to doubt that the Settlement Agreement is genuine and binding and there are no indications on the record that serve to challenge its validity or enforceability.   Further, the Sole Arbitrator is satisfied that the Respondent has not complied with its payment obligations under the Settlement Agreement, and therefore finds that the Respondent is due to pay the Claimant the Settlement Amount of USD 1,500,000.

15

LCIA Case No: 215305
VISA COMMODITIES AG v BLUESTONE COAL SALES CORP.          Final Award

### 9.2   Interest

82   In the Request, the Claimant claims interest on any amounts awarded by the Tribunal "*at such a rate and for such a period as the Tribunal thinks fit*".

83   In the Cost and Interest Submission at paragraph 32, the Claimant does not particularise any general claim for interest but submits it is due: "*its full costs along with interest on the basis that it is the successful party*".

84   The Claimant thereafter requests at paragraph 35 of the Cost and Interest Submission that the Sole Arbitrator "*make an Order that the Respondent pays the Claimant's full costs of the Award along with interest on those costs at 8%*"

85   Unless the Parties have agreed otherwise, under Article 26.4 of the Rules and Section 49 of the Arbitration Act, the Tribunal has broad discretion as to the award of interest on sums awarded.

86   The Claimant's claim for interest generally is unparticularised.

87   As to its claim for interest on costs, the Claimant has not provided any support for the claimed rate of 8%, nor the period over which such interest should run, nor whether that interest should be simple or compounded.

88   The Sole Arbitrator finds that the Claimant is entitled to interest on the amounts awarded to it, but that such interest should be at an appropriate commercial rate.

89   Neither the SPA nor the Settlement Agreement contain any reference as to interest, and the Sole Arbitrator therefore finds no guidance from these sources as to an appropriate rate.

90   Exercising her discretion under Article 26.4 of the Rules and Section 49 of the Arbitration Act, and in light of the Claimant's place of incorporation (Switzerland), the Sole Arbitrator finds that the appropriate rate is the default interest rate under Article 104 of the Swiss Code of Obligations, and therefore that simple interest at 5% per annum is payable on: (i) the three USD 500,000 instalments of the Settlement Amount, running from the date at which each was due, namely: 31 May 2021; 30 June 2021; and

16

LCIA Case No: 215305
VISA COMMODITIES AG v BLUESTONE COAL SALES CORP.                    Final Award

30 July 2021 (respectively) until the date of payment; and (ii) on the total amount of Arbitration Costs and Legal Costs awarded (at paragraph 102 below) from the date of the Final Award until the date of payment.

## 10   THE COSTS OF THE ARBITRATION

91   Pursuant to Article 28 of the LCIA Rules and the LCIA Schedule of Arbitration Costs, the Costs in these arbitration proceedings consist of (i) the administrative fees of the LCIA and the fees and costs of the Tribunal (the "**Arbitration Costs**"); and (ii) the legal fees and costs of the Parties (the "**Legal Costs**").

### 10.1   The Arbitration Costs

92   The net Arbitration Costs have been determined by the LCIA Court, pursuant to Article 28.1 of the LCIA Rules, to be as follows:

| | |
|---|---|
| Registration fee | GBP 1,950.00 |
| LCIA's administrative charges | GBP 8,450.08 |
| Tribunal's fees and expenses | GBP 8,958.03 |

93   For the above costs, the Claimant has lodged a registration fee, the Advance and the Further Advance amounting to GBP 19,950.

94   The Respondent has not lodged any advances.

95   The total funds lodged by the Claimant have been applied to the Arbitration Costs. Accordingly, there remains on the LCIA's account, a balance of funds of GBP 591.89 which is to be returned to the Claimant by the LCIA. The Respondent should reimburse the Claimant the sum of GBP 19,358.11 which sum has been funded by the Claimant through the registration fee, Advance and Further Advance that it lodged with the LCIA.

17

### 10.2   The Legal Costs

96   The Claimant claims GBP 16,021 as Clyde & Co's legal fees.  It does not claim any costs for disbursements.   As stated above, those fees are supported by a brief "Schedule of Costs".

### 10.3   Claimant's position on the apportionment of Costs

97   The Claimant submits that it should be entitled to its full costs where it is the successful party and, that when considering the reasonableness of the costs claimed, the Sole Arbitrator should have regard to the Respondent's conduct, specifically its failure to engage in the arbitration following the submission of its Response.

98   The Claimant refers to the Tribunal's powers under section 61 of the Arbitration Act, including the general principle that costs follow the event, and suggests that the Sole Arbitrator may also be guided in the exercise of its discretion by Part 44 of the (English) Civil Procedure Rules.

### 10.4   Sole Arbitrator's Findings

99   With respect to the apportionment of the Arbitration Costs and the Legal Costs, Article 28.4 of the LCIA Rules provides as follows:

*"The Arbitral Tribunal shall make its decisions on both Arbitration Costs and Legal Costs on the general principle that costs should reflect the parties' relative success and failure in the award or arbitration or under different issues, except where it appears to the Arbitral Tribunal that in the circumstances the application of such a general principle would be inappropriate under the Arbitration Agreement or otherwise. The Arbitral Tribunal may also take into account the parties' conduct in the arbitration, including any co-operation in facilitating the proceedings as to time and cost and any non-co-operation resulting in undue delay and unnecessary expense. Any decision on costs by the Arbitral Tribunal shall be made with reasons in the award containing such decision..."*

100    The Sole Arbitrator has full discretion as to the circumstances that it may take into account when determining the apportionment of costs, which may include the conduct of the Parties. The Sole Arbitrator enjoys a similar discretion under section 61(2) of the Arbitration Act.

101    In this instance, the Claimant was successful in its claim. In addition, the Respondent both (i) delayed the proceedings by its failure to participate subsequent to the filing of its Response; and (ii) increased the costs of the proceedings by necessitating additional steps by the Sole Arbitrator to ensure that the progress of the arbitration was brought to the attention of the Respondent, (and its counsel) so that (in the face of silence) the Respondent was nevertheless afforded full opportunity to know and respond to the case made against it.

102    In view of all of the above, the Sole Arbitrator finds that the Respondent should bear the Arbitration Costs and accordingly reimburse the Claimant the sum of GBP 19,358.11; and should bear the Claimant's Legal Costs, in full, in the amount of GBP 16,021.

## 11   DISPOSITIVE PART

103    For the reasons set out above, the Tribunal makes the following Final Award:

    a)   The Respondent is ordered to pay to the Claimant the Settlement Amount of USD 1,500,000;

    b)   The Respondent is ordered to bear the Arbitration Costs and accordingly reimburse the Claimant the sum of GBP 19,358.11.

    c)   The Respondent is ordered to bear the Claimant's Legal Costs in the amount of GBP 16,021.

    d)   The Respondent is ordered to pay simple interest at the rate of 5% on the amounts awarded above as follows:

        • As to (a): from the due dates of the individual instalments (each in the amount of USD 500,000) of the Settlement

LCIA Case No: 215305
VISA COMMODITIES AG v BLUESTONE COAL SALES CORP.                    Final Award

Amount (such dates being 31 May 2021, 30 June 2021, and 30
July 2021) until the date of payment; and

- As to (b) and (c): from the date of the Final Award until the
date of payment.

Seat of Arbitration: London

On 7 April 2022

The Arbitral Tribunal

_____
**Genevieve Poirier**
Sole Arbitrator

20